# The Cumberland Valley Mutual Protection Co. *versus* Douglas *et al.*

1. An insurance of a "*dwelling-house,*" or as an "*occupied dwelling-house,*" does not imply an engagement that it shall always be occupied whilst the risk endures.

2. A change of tenants has no effect on the insurance, if the use be not changed.

3. A fire policy is a protection against fire from the negligence of the assured himself, unless the negligence amounts to fraud.

[Cumberland Valley Mutual Prot. Co. *v.* Douglas.]

May 7th 1868.   Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Adams county:* To May Term 1868, No. 27.

This was an action of debt on a policy of insurance, brought to November Term 1864, by J. W. Douglas and others, partners under the name of The Caledonia Cold Springs Company, against The Cumberland Valley Mutual Protection Company.

The plaintiffs gave in evidence their application for insurance of "Dwelling-house, Caledonia Spring Buildings," consisting of a frame weather-boarded building, four stories high, 100 feet by 50 feet deep, with two wings about 50 feet long by 34 feet wide, &c.

The policy was dated May 19th 1859 insuring $5000 for five years on the building described in the application, which is made part of the policy. It was stipulated in the policy that if the "premises or any part thereof, shall, at any time during the continuance of this policy, be so altered, or be appropriated, applied or used to or for the purpose of carrying on therein, any trade, business or vocation, which, according to the class of hazards or rates adopted by the company, and annexed to their by-laws, and hereby referred to, would increase the risk or hazard, unless it be by consent and agreement of the company, endorsed upon this policy, then and from thenceforth, so long as the same shall be so appropriated, applied or used, this policy shall cease and be of no force or effect."

The building was burned December 24th 1862, and was a total loss. The plaintiffs here closed.

The defendants then offered to prove : That during the summer of 1862, and for two or three summers before, the buildings were occupied by Mrs. Cooper, who occupied part of the house, and kept a few boarders; that the plaintiffs had abandoned the buildings as a watering-place to be kept by themselves; that in the latter part of September 1862, Mrs. Cooper left the house, and it remained vacant until the 24th of December, when it was destroyed by fire, except that shortly after Mrs. Cooper left it, Isaiah Carbaugh occupied it for about two days; that when Mrs. Cooper left the property, the plaintiffs removed from the house the most valuable part of their furniture ; that in removing the furniture, plaintiffs emptied the contents of their straw beds in two of the rooms in the building; that the house was frequently broken into, during the time it was standing vacant; that plaintiffs were notified of the fact, that the house was vacant, and that the doors and windows were found open; that the property was situated in a remote and lonely place, and that the destruction of the building was accomplished after night, by the work of an incendiary; that the defendant had no knowledge of the fact that the property was vacant, and never consented to its being allowed to remain

[Cumberland Valley Mutual Prot. Co. v. Douglas.]

without an occupant; that notice of the property being vacant, was given to J. W. Douglas, one of the plaintiffs.

The offer was rejected by the court, and a bill of exceptions sealed.

The court (Fisher, P. J.) directed the jury to find a verdict for the plaintiffs for the amount of the policy and interest.

The jury found for the plaintiff $6413.33.

The defendants took a writ of error, and assigned for error the rejection of their offer and the instruction of the court.

*D. Wills* (with whom were *J. B. Kennedy* and *J. McD. Sharpe*), for plaintiffs in error, cited Girard Ins. Co. v. Stephenson, 1 Wright 293; Lycoming Ins. Co. v. Updegraff, 4 Id. 323; Phœnix Ins. Co. v. Cochran, 1 P. F. Smith 143; Cumberland Protection Co. v. Schell, 5 Casey 37; Franklin Ins. Co. v. Findlay, 6 Whart. 483; Citizens' Ins. Co. v. Marsh. 5 Wright 386; Curry v. Commonwealth Ins. Co., 10 Pick. 535; Stetson v. Massachusetts Ins. Co., 4 Mass. 330; Gammell v. Merchants' and Fire Ins. Co., 12 Cush. 167; Grant v. Howard Ins. Co., 5 Hill 10; Smith v. Mechanics' and Fire Ins. Co., 32 N. York 399; Parker v. Bridgeport Ins. Co., 10 Gray 202; Rice v. Tower, 1 Id. 426.

*D. McConaughy* (with whom were *F. M. Kimmel, Stambaugh & Gehr* and *J. W. Douglas*), for defendants in error, cited O'Neil v. Buffalo Ins. Co., 3 Comstock 122; Marsh on Insurance 347; Catlin v. Springfield Ins. Co., 1 Sum. 345; Somerset Ins. Co. v. McAnally, 10 Wright 41; American Ins. Co. v. Insty, 7 Barr 230; Johnson v. Berkshire Mutual Ins. Co., 4 Allen 338; Parson on Cont. 571.

The opinion of the court was delivered, May 14th 1868, by

STRONG, J.—The subject insured was described in the policy as "a four-story building, basement stone, balance frame, fifty by one hundred feet; two wing buildings each about thirty-four by fifty feet, three stories high; also, two-story stone kitchen attached with one wing by a frame covered building." The application, which was agreed to make part of the policy, denominated the property as "dwelling-house, Caledonia Spring Buildings," and describes it, in other respects, substantially as it was described in the body of the policy. In neither is a word said respecting the occupancy of the building, or the uses to which it should be put. These are only to be inferred from its description. There is no representation that it was an occupied dwelling-house or building at the time when the insurance was effected, and no warranty that it should be occupied during the continuance of the risk. At least there is no such express representation or warranty. But the defendants below, now plaintiffs in error, contend that the

[Cumberland Valley Mutual Prot. Co. *v.* Douglas.]

description of the property as a dwelling-house amounted to a representation that it was tenanted, or occupied when the policy issued, and an engagement that it should continue to be occupied. Interpreting the contract of the parties thus, they offered to show on the trial that the plaintiffs had abandoned the buildings as a watering-place to be kept by themselves; that for three or four summers before the fire a Mrs. Cooper occupied them and kept boarders; that some three months before the fire she left the house and it remained vacant until it was destroyed by the work of an incendiary; that the plaintiffs were notified that the house was vacant, and that the doors and windows were found open; that the defendants had no knowledge of the fact that the property was vacant, and never consented to its remaining unoccupied; and that after Mrs. Cooper left the plaintiffs removed the most valuable part of their furniture and in so doing emptied the contents of straw beds into two of the rooms in the building. Such was the substance of the offer. It was rejected by the court, and we think correctly. It embraced two propositions, *first*, to prove that the building was left unoccupied with the knowledge of the owners, and without the knowledge or consent of the insurers, and, *second*, to prove that the defendants had been guilty of negligent conduct, either by themselves or by their servants or agents, though it was not alleged that the fire was a direct consequence of the negligence. Now, it is obvious that the evidence offered to prove that the building was left unoccupied was wholly immaterial, unless it tended to show either a change in the subject insured, or a breach of a warranty, or the falsity of a representation. It did neither. I think it has never been held that the insurance of a dwelling-house implies that it is a tenanted house, much less that it implies an engagement of the assured that it shall always be occupied while the risk taken endures. Policies often contain stipulations in regard to occupancy, but they are expressed plainly, and if considered material, they are stated to be either conditions or representations. The policy in this case contains nothing of the kind. On the contrary, the 18th article of the by-laws allows the fullest liberty for changes of tenants without notice, if the property be not used for other purposes than those for which it was used when insured. And even if a building be insured as an *occupied dwelling-house*, even if application be made for a policy on an *occupied dwelling-house*, while it might amount to a false representation if the property was unoccupied at the time, it is not an assertion that it shall remain unoccupied. It is matter of description of the subject, rather than stipulation respecting its use. It may be that hazard of fire is greater when a dwelling-house is left untenanted. So it is greater or less in cases of tenancy by different persons; but in the absence of express stipulation to the contrary, a change of tenants has no effect whatever on the con-

tract of insurance if the use be not changed.   It is vain to argue that no use at all is an use for other purposes than those for which the building was used when insured.   This case is not to be confounded with those cases in which there have been alterations of the subject insured, and where the question has been whether the danger of loss was increased.   Here the question is what was the risk assumed?   Was it a dwelling-house simply that was insured, or a dwelling-house occupied?   Did the policy bind the assured to any use?   We think it did not, further than that when used, it should be only as a dwelling-house.

In Catlin *v.* The Springfield Ins. Co., 1 Sumn. 345, where it appeared that a house had been insured as a dwelling-house, but to be occupied as a tavern, Judge Story said : " The doctrine had never, to his knowledge, been asserted, nor should he deem it maintainable that a policy against fire on the house of A. in Boston described as a dwelling-house would be void if the house should cease for a time to have a tenant.   This in a case where a house had been described 'to be occupied.'"   In O'Niel *v.* The Buffalo Fire Insurance Co., 3 Comst. 122, in entering judgment the court said, assuming that there was a written application by the plaintiff describing the house as occupied by Goodhue, the description in the policy must be regarded as a warranty of the fact that he was the occupant at the date of the policy, and nothing more.   The description imports nothing more.   The defendants insist that the description warrants not only that he was the occupant at the date of the policy, but that he was to remain the occupant during the continuance of the risk.   But the parties have not thought proper to express themselves to that effect.   A warranty may be affirmative, as when the insured undertakes to perform some positive allegation, or promissory, as when the assured undertakes to perform some executory stipulation.   Here was an affirmative stipulation that the house was then occupied by Goodhue, but not a promissory agreement that he should continue to occupy it."   This goes much further than we need go in the case in hand.   Here there is neither affirmation nor promissory agreement respecting occupancy.   The evidence offered to prove that the building was unoccupied for some time before the fire, was quite immaterial.

And so was that offered to prove negligence in the care and use of the building.   Indeed the contrary was not urged in the argument before us.   It was not alleged that the loss occurred in consequence of the plaintiff's negligence, but if it had been it would not matter.   A fire policy is a protection against fire caused by the assured's own negligence, unless the negligence amounts to fraud.   This is the doctrine of all the cases, and of the elementary writers.

The judgment is affirmed.