## Pottsville Mutual Fire Insurance Co. *versus* Fromm.

100  347
190  543

100      347
f  26 SC 477

1. Where the agent of an insurance company examines and inspects a building upon which the owner desires to effect a policy of insurance, and afterwards fills up an application which he reads and explains to the owner and which is signed by him, such agent is to be regarded, with respect to the application, as the agent of the owner, and not of the company.  Hence the company is at liberty to set up the falsehood of statements in the application as to the condition and use of the insured

premises, as a defence to an action on a policy of insurance issued by it in pursuance of such application.

2. Eilenberger *v.* Protective Mutual Fire Insurance Co., 8 Norris 464, distinguished.

3. In an application for a policy of insurance upon a certain building, the same was described as a dwelling house occupied by the applicant. It was actually an unfinished building never occupied by any one. By the terms of the policy issued in pursuance of said application, the application was made part of the policy, and all statements therein contained were warranted to be true. A loss having occurred under the policy, and suit being brought to recover the amount thereof,—*Held*, that the plaintiff had been guilty of such a breach of warranty as precluded his right to recover.

4. Cumberland Valley Insurance Co. *v.* Douglas, 8 P. F. S. 419, distinguished.

April 17th 1882. Before SHARSWOOD, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. MERCUR, J., absent.

ERROR to the Court of Common Pleas of *Schuylkill county :* Of January Term 1882, No. 236.

Covenant, by Samuel Fromm to use of C. G. and H. R. Loose, assignees, against the Pottsville Mutual Fire Insurance Company upon a policy of insurance for $600, dated September 6th 1872, for five years, upon a " two-story log dwelling-house, chunked and smeared in cracks, plastered inside, 26 by 22 feet, situate in North Manheim township, Schuylkill County, Pa." The insured duly paid the premiums as they fell due until the destruction of the building by fire on October 27th 1875. The defendant company refused to pay the loss, and this suit was brought.

The material facts as they appeared on trial, before WALKER J., are set forth in the opinion of the court below, of which the following is a resumé.

In August 1872 David H. Klock, an insurance soliciting agent of the defendant company, called on Samuel Fromm, and after effecting one insurance transaction with him, asked him whether he had any other property to insure, to which Fromm replied he had a building on the adjoining farm. Klock went with Fromm and examined the building, and subsequently on September 6th 1872, Klock returned, again visited the building with Fromm, and filled up an application for insurance upon which the policy in suit was issued. In answer to printed questions in the application the building was described as a dwelling house containing one chimney and fireplace, ashes, stove and pipes well secured in safe places, occupied by the applicant. In fact the building was unfinished, and unoccupied. The plaintiff testified to the following effect : that Mr. Klock looked at the house and said that he thought it was worth $800 ; that

as the company did not insure for more than three-fourths of the value, he would have to insert in the policy the sum of $600, because that was the limit of his instructions. Then Fromm said: "I do not want the house insured too high, because the assessment or tax on it due to the company would be high if you make the property high;" that in case of a loss by fire there might be some trouble, and he requested him not to put it at the extreme limit. But Mr. Klock said that he thought from his knowledge of the house by examination thereof that it was worth $800, and that he would insert $600 in the application, which he accordingly did.

Also that Mr. Klock asked him why he did not rent that house, that it was a good house, and that he, Mr. Fromm, replied that if he did get a tenant there it was so situated that the chickens might destroy more than the rent would yield, and that this conversation took place at the time when the application was made up.

The plaintiff called Mr. Klock, who stated that he saw that the house was unfinished, but that from conversation with Mr. Fromm he was led to believe that he would soon finish and occupy it; that he went in the house and outside; that there was no one living in the house; that it was a dwelling-house unoccupied; that he insured it as an occupied dwelling-house under the impression, from what Mr. Fromm said, that it would be occupied soon, either by himself, a son, or daughter; that as this was said he did not think it material enough to insert that it was at present unoccupied in filling up the applicasion, expecting that it would be repaired and occupied in a short time. That the valuation was fixed at that time by the conversation had with Mr. Fromm, and under the impression that he would soon move into and repair it, and that if he did so it would be worth that amount, $800.

There was some dispute as to whether the application as written by Klock was read or explained fully to Fromm at the time he signed it. Fromm was a Pennsylvania German and could not speak English; but Klock testified that he explained the contents fully to him in Pennsylvania Dutch. The policy contained the usual conditions, that the application should constitute a warranty, and that if the insured building should become vacant the policy should be void. These conditions are recited in full in the opinion of this court.

The defendant presented, inter alia, the following point:

10. That under all the evidence in the case the plaintiff cannot recover, and the verdict of the jury must be for the defendant. Answer.—This is negatived for the present, and the point reserved.

Verdict for plaintiff, for $804. The defendant took a

rule to show cause why judgment should not be entered in favor of defendant, on the reserved point, non obstante veredicto, which rule the court discharged, and entered judgment for plaintiff on the verdict ; whereupon the defendant took this writ of error, assigning for error, inter alia, the refusal of their tenth point, as above, and the entry of judgment on the verdict.

*A. W. Schalck,* for the plaintiff in error.—The policies of this company have recently been twice before this court in Insurance Co. *v.* Horan, 8 Norris 438, and Same v. Same, 11 W. N. C. 198, and substantially the same questions as are involved in the present case were discussed, and settled in those cases.

The falsity of the warranty, contained in the application, that the insured building was an occupied dwelling house, violated the contract at its inception and the policy never became binding on the company : McClure *v.* Ins. Co ., 90 Pa. St. 277 ; Sayles *v.* Ins. Co., 2 Curtis 610 ; Daniels *v.* Ins. Co., 12 Cush. 416-421.   No evidence in the case could affect this invalidity of the policy, and our tenth point should therefore have been affirmed.

*J. W. Ryon (J. W. Roseberry* with him), for defendant in error.—Whatever falsity existed in the answers to questions in the application, it was the act not of the plaintiff, who could neither speak nor write English, but of the defendant's agent, who, with full knowledge that the house was vacant, filled up the application.   An insurance company cannot avoid a policy on the ground of violation of its terms where such violation was the deliberate and conscious act of its own agent, committed within the scope and in the execution of the powers vested in him by the company and without fraud or misrepresentation on the part of the assured : Eilenberger *v.* Ins. Co., 7 W. N. C. 363 ; Howard Ins. Co. *v.* Bruner, 11 Harris 57.   The policy in this case contains no express stipulation or condition prohibiting the insurance of an unoccupied dwelling house, and the insurance of a dwelling-house as an occupied dwelling-house is matter of description merely, and not a warranty of a material fact unless it be expressly and plainly stipulated to that effect in the policy : Cumberland Valley Ins. Co. *v.* Douglass, 8 P. F. S. 419 ; McAvally *v.* Ins. Co., 5 Pitts. Rep. 189 ; Kimball *v.* Ins. Co., 9 Allen 540.   A statement made by the assured, at the time of effecting the insurance, of his intentions merely, does not amount to a warranty or representation, and will not affect the policy unless fraudulently made : Bryant *v.* Ins. Co., 22 Pick. 200 ; and the jury have found there was no fraud in this case.

Mr. Justice Green delivered the opinion of the court, May 29th 1882.

One of the conditions of the policy in suit is in the following words:

"Applications for insurance shall specify the construction and material of the buildings to be insured, by whom occupied, whether as a private dwelling or how otherwise; the applicant shall also state the true cash value of the property to be insured; also any other facts relating and material to the risk, and the said valuation, description and survey shall be taken and deemed to be the act of the assured and a warranty on his, her or their part, and said warranty shall apply to all property insured, whether real or personal. A false description or omission to make known in said application any fact or feature relating to the risk, which if known would induce the company to reject said application, or would in their estimation increase the hazard of the same, or an over-valuation of the property or interest to be insured, shall render absolutely void any policy issued upon such description or valuation."

Another condition is as follows:

"Any building, insured by this policy, becoming vacant or tenantless for a period of fifteen days, notice thereof must be immediately given to the secretary, and his consent obtained thereto in writing, otherwise the policy shall be void."

The application contained the following questions and answers:

"Question—How many chimneys, stoves and fireplaces?

"Answer—One chimney, one fireplace.

"Question—How are stoves and pipes secured?

"Answer—Well.

"Question—Are ashes secured in safe places?

"Answer—Well.

"Question—Who owns the building?

"Answer—Applicant.

"Question—Who occupies the building and for what purposes are they occupied? How many tenants?

"Answer—Applicant."

Attached to and as a part of the application are the following stipulations, inter alia:

"But if any untrue answer has been given to the foregoing interrogatories, whereby the said company has been deceived, as to the character of the risk, or if any change be made as to tenants and occupancy of these premises, without being notified to this company, and indorsed upon their policy, then said policy of insurance to be void, and of no effect."

"And the insured hereby covenants and engages that the representations given in the application for this insurance is a

warranty on the part of the assured, and contains a just, full and true exposition of all the facts and circumstances in regard to condition, situation, and value of the property insured."

The policy also provided, that the application was a part of the policy, and was a warranty on the part of the assured, and that the policy was made and accepted in reference to the application and the conditions thereto annexed, which were to be used and resorted to in order to explain the rights and obligations of the parties. The property insured was described in the application as a " 2 story log dwelling-house chunked and smeared in cracks, plastered inside, 26 by 22, situate in South Manheim township, Schuykill county, Pennsylvania."

The substance of the representations contained in the application and in the answers to questions, is that the building insured was a log dwelling-house, two stories high, provided with a chimney and a fire place, with stoves and pipes well secured, ashes secured in safe places, and actually occupied by the insured. In real fact the building was not a dwelling-house, never having been finished for use, it was not provided with stoves and pipes, it is not certain that there was any chimney or fire place, or any provision for securing ashes, it was not occupied by the insured, and it was never occupied by any person from the time of the application to the time of the fire. On the contrary, the uncontradicted testimony, mainly that of the plaintiff and his son, shows that it was empty and altogether unoccupied, at the time of the application, that the upper story was not plastered, that the partitions were not in, except the studding, that no person lived in it, up to the time of its destruction, that during the whole of that time, from September 6th 1872, to October 27th 1875, it was either absolutely vacant, or occasionally used to store hay, or broom corn, or implements of agriculture, temporarily. In no sense whatever was it used as a dwelling-house for a single moment during the whole time of insurance. It is quite unnecessary to cite authorities to show, that in such a state of facts, prima facie, the policy was void. This was so by the express terms of the instrument. On behalf of the plaintiff, it was sought to avoid the consequences of the several manifest breaches of warranty appearing in the case, by the theory that Klock, the agent of the company who took the application and procured and delivered the policy, was on the premises in person, saw the building just as it was, knew that it was unoccupied, and nevertheless filled up the answers to the questions just as they are found in the policy. It is argued that his knowledge was the knowledge of the company, and that the company, and not the insured, is bound by his acts, in writing out the answers, whether they were written fraudulently or by mistake. As matter of fact it is true the answers were writ-

ten on the application, by Klock, either from verbal answers made by Fromm or from his personal observation. It is also true that Klock was on the premises, saw the building as it was, and did make personal observation of its condition, and surroundings. But it is equally true, that Fromm signed his name to the application after it was filled out with the answers, and did thereby adopt them as his own. Klock testifies that at the time he and Fromm were on the premises, Fromm told him he intended to finish the house shortly, and that he, or one of his family would move in. Thus he said : "I understood Mr. Fromm to say at the time, that he would repair the house within a very short time, and either himself, or some one of his children would move in, and live there, within a short time." And again in reply to a question he said :

"Q. He did not tell you when he would fix it up ?

"A. In a short time. I suppose from what he said, he would begin to fix up within a week or ten days."

Again he says—"It was in good order, only it wanted finishing, and as I said before my impression was that Mr. Fromm would finish the house and occupy it himself, or some one of his children ; and under that impression I effected that insurance." Also—"It runs in my mind now that either a son or a daughter were to move into the house, and the reason they said they did not move, was that they had not the furniture, they were expecting to get furniture and then they would move into this house." He also testified that if it had not been for these promises and assurances he would not have taken the risk and that these were what induced him to take the application and send it to the company.

Klock was Fromm's witness and was not contradicted as to this testimony. Fromm himself testified as follows :

"Q. What else did you say to Klock about occupying the house ?

"A. Then I said the intention is to finish it some time, and probably I or one of my sons will move into it.

"Q. It was first intended that your son should move into it, and then that your son declined going in ; and then that you said that you were going to go into it ?

"A. No, only the calculation was that I or one of my boys would move in when we could.

"Q. You were living at the other house ; where was your son living at that time ?

"A. Lived with me in the house.

"Q. How soon was he to move in, or how soon did you expect to fix it up ?

"A. I had no time fixed for that. I just thought as quick

4 OUTERBRIDGE.—23

as I could do it after I had not so many debts to pay any more
I would fix it up.

" Q. you would fix it up as quick as you could and then
move in ?

" A. And I or one of the boys would move in.

" Q. At that time the house was not used for anything,
was it ?

" A. No."

Fromm was a Pennsylvania German and could not speak or
write English, and Klock testified that he read over the ques-
tions to him and explained whatever was necessary, speaking in
Pennsylvania Dutch, and that Fromm understood it.   This was
not denied by Fromm, nor does he say that he did not under-
stand what was in the application when he signed it.   He does
not say that he was induced to sign it just as it was, by any
representations or promises made by Klock or that any kind of
fraud or imposition was practiced upon him to obtain his signa-
ture.   Had he been ignorant of the contents of the application,
which he does not allege, we see no reason why, in these cir-
cumstance, he should not be subject to the ordinary rule that
"if one who is about to execute an instrument can read it and
neglects to do so ; or being blind or illiterate, chooses to act
without requiring the contents to be made known to him, he
will be bound to it, though it turn out to be contrary his mind."
Greenfield's estate, 2 Harr. on p. 504.   The case of Eilenberger
*v.* Protective Mutual Fire Ins. Co., 8 Norr. 464, is cited and
much relied upon on behalf of the plaintiff, and the rule there
laid down is invoked as controlling the present case.   But there
the circumstances were entirely different.   The insured made
true answers to the questions, but the agent wrote them out
differently and falsely.   In addition to this the agent in answer-
ing the questions addressed to himself made false answers.   Mr.
Justice Trunkey, in delivering the opinion of the court, on p.
469 said, " Upon the verity of the plaintiff's testimony he had
no knowledge of the fraud or mistake of the defendant's agent
previous to the fire.   The agent falsely induced him to sign a
statement which he had not made and did not intend to make."
Then after stating the false answers of the agent himself, he
adds, " By what rule shall that contract be void as respects an
innocent party, who first discovers the fraud after his loss ? The
assurer believed both statements ; the assured knew nothing of
the contents of either.   Which party shall suffer ?   By elemen-
tary principles, the one who employed and gave character to
the agent and issued the policy upon his act, and not he who
innocently paid his money."   On p. 468 he further says, " The
authorities go far, very likely not too far, in holding the assured
responsible for his warranty and in excluding oral evidence to

[Pottsville Mut. Fire Ins. Co. v. Fromm.]

contradict or vary it; but they do not establish that where an agent of the assurer has cheated the assured into signing the warranty and paying the premium, and the policy was issued upon the false statements of the agent himself, the assured shall not prove the fact and hold the principal to the contract, as if he had committed the wrong."

These citations disclose the facts, and considerations upon which the decision of that case was based, and it is only necessary to add that they have no application to the present case. The case of Cumberland Valley Ins. Co. v. Douglas, 8 P. F. S. 419 is also cited, as authority, that a description of a house as a dwelling house, or as an occupied dwelling house, does not imply a stipulation that it shall not became vacant. But in that case there was no warranty that the dwelling-house was occupied, as there is here, and in this case there is, in addition, an express agreement in the third condition of the policy, that if the building insured became vacant, or tenantless for a period of fifteen days, notice must be immediately given to the secretary, and his consent obtained in writing, otherwise the policy shall be void. It is an undisputed fact, that this building was vacant for nearly three years, and no notice was given to the company. We can not escape holding the policy void, for this reason, unless we arbitrarily disregard the positive provision of the contract. It is no reply to say that the building was vacant at the time of the application, and the agent of the company knew it, because the condition of the policy was a continuing engagement, enduring through the life of the policy. It was at all times obligatory upon the assured, and as he had the policy in his own possession, he is not at liberty to plead ignorance of its contents. In the case of Pottsville Mutual Fire Ins. Co. v. Horan, 11 W. N. C. on p. 201 we said: "The insured was a member of the company, had the policy in his possession, and it must be presumed, he knew it was necessary not only to notify the company, that he had erected the new building, but also to obtain the written consent to a continuance of the policy. Having failed to do this, the policy by the very terms of the condition became void." Upon the testimony of the plaintiff and his witnesses it is clear to our minds, that the policy in suit was fatally vitiated by the breaches of warranty and condition to which we have referred. The defendant's tenth point, that under all the evidence, the verdict must be for the defendant, should have been affirmed.

Judgment reversed.