# A. J. Lennox *v.* Greenwich Insurance Company, Appellant.

*Insurance—Agency as between insured and company.*

Where one engages another to procure insurance for him, the person thus employed is the agent of the insured in making representations as to the subject of insurance upon the faith of which the policy is issued.

*Insurance—Inaccurate description by agent of insured.*

Where the policy provides that " if an application, survey, plan or description of property be referred to in the policy, it shall be a part of this contract and a warranty by the insured," and the description of the building furnished by the agent of the insured and inserted in the policy represents it as a dwelling, when in fact it was not, and the insured accepts and holds the policy without objection, such description of the building is a warranty that it is a dwelling which binds the insured.

The description of a building as a " dwelling " was not, however, a warranty that it was an *occupied* dwelling.

Argued April 13, 1896.    Appeal, No. 92, April T., 1896, by defendant, from judgment of C. P. No. 3, Allegheny County, November Term, 1892, No. 246, on verdict for plaintiff.    Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ.    Reversed.

Assumpsit on fire insurance policy.    Before KENNEDY, P. J.

At the trial it appeared that plaintiff owned a house in Oakdale.    His father lived in Washington, Pa., and a few days before the date of the policy sent an agent named Hughes to Oakdale to see his son about insurance.    Hughes, a life insurance agent, went to Oakdale supposing plaintiff wanted life insurance, but upon arrival found that fire insurance was desired.    At plaintiff's request he undertook to and did place the risk with defendant company upon a verbal application stating that the building was a *dwelling* and defendant issued its policy describing the premises as " a two story tin roof dwelling."    It was alleged and testimony given tending to show that the building was occupied as a flour and feed store for sale of hay, grain and mill feed.    The building was totally destroyed and proof of loss made.    Defendant declined payment on the ground of alleged misrepresentation as to character of the risk and non-

432        LENNOX v. INS. CO., Appellant.

Statement of Facts—Opinion of the Court.    [2 Super. Ct.

occupancy.   The case was first tried in 1893 resulting in judgment for plaintiff, reversed by Supreme Court, 165 Pa. 575. Other facts appear by the opinion of the Superior Court.

Defendant's first point and answer thereto were as follows: Under all the evidence Hughes, in applying for a policy, was the agent of the plaintiff, Lennox, and not of the defendant company.   Answer:  Refused. [2]

Defendant's second point was as follows:

The description (in the oral application by Hughes) of the building as a dwelling was a warranty that the building at that date was in fact used as a customary place of abode by its tenants or occupants, and if the jury believe from the evidence that the building at said date was in fact used as a feed store there was a breach of warranty, the policy became void and the verdict must be for the defendant.   Answer :  This is refused. [3]

The court charged the jury, inter alia, as follows:

At the outstart of the case, and during its progress, the claim was set up by the defendant company that Mr. Hughes was the agent of the plaintiff in this whole transaction, and that plaintiff was bound by his representations.   Under the evidence, gentlemen, I cannot so instruct you.   I say to you as a matter of law that under this evidence he was not the agent of the plaintiff in the matter.   So that that question is not for consideration by you in your investigation of the case, and the making up of your verdict. [1]

Verdict and judgment for plaintiff for $709.50.   Defendant appealed.

Errors assigned were, (1) portions of judge's charge, reciting same; (2, 3) answers to points, reciting same.

William Scott, of Dalzell, Scott & Gordon, for appellant.

W. K. Jennings, for appellee.

OPINION BY RICE, P. J., October 12, 1896 :

The subject of insurance as described in the policy was the plaintiff's " two story frame tin roof dwelling."   The policy con-

tains this condition : " This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof." The defendant alleged, and introduced evidence to show, that the building was not a dwelling but a feed store and that the policy was issued upon the oral application of Samuel Hughes, and upon the information furnished by him to J. A. Howden, the local agent of the company, that the building was a dwelling. It was expressly decided in this case, when it was before the Supreme Court (165 Pa. 575), that " the evidence as to the representations made by plaintiff's agent Hughes in the application should have been admitted." On the present trial, the court instructed the jury, that the only important question for them to decide was whether the building was vacant and unoccupied at the time of the fire and for ten days previous thereto, thus excluding from their consideration the evidence tending to show that the building was not a dwelling, but a feed store, and that Hughes had incorrectly represented it as the former to the local agent of the company. The representation was as to the subject of insurance, and if it was untrue, and was made by the insured or his agent surely it could not be asserted as a proposition of law, that it was not material. The most that the plaintiff could possibly claim in that case would be, that the question of the materiality of the representation was for the jury.

The question then arises whether the plaintiff was bound by it.

The defendant requested the court to charge that under all the evidence, Hughes in applying for the policy was the agent of the plaintiff and not of the company. The court refused the point and in the general charge went further and instructed the jury as matter of law that under the evidence Hughes was not the agent of the plaintiff in this matter. In giving this latter instruction we think that the learned judge fell into error. He thereby withdrew from the consideration of the jury evidence from which they would have been justified in finding that Hughes was acting as the plaintiff's agent in obtaining the insurance, and assumed that the misrepresentation as to the subject of insurance was his blunder for which the plaintiff was in no wise responsible. But Hughes testified that the plaintiff

informed him that the building was his dwelling. As this testimony has an important bearing on the question we quote part of it.

" A. I took the distance as near as I could between the buildings, and then the size of the building as Mr. Lennox gave it to me, and I represented it to Mr. Howden. Q. As you saw it? A. Yes, sir. Q. Did you say whether it was occupied as a dwelling or not? A. Mr. Lennox said it was his dwelling. Q. Did you say when you were giving your description that it was occupied? A. I suppose it was, I didn't know. Q. Well, I am asking you? A. Represented it to Mr. Howden that it was a dwelling. Q. Did you say it was occupied? A. Through Mr. Lennox. Q. Did Mr. Lennox tell you it was occupied? A. Yes, sir; Mr. Lennox said it was his dwelling. Q. Did he say he ·lived there? A. I don't think he did. Q. What do you mean, then, when you say you said it was his dwelling, you mean he owned the house? A. Owned the house and occupied it. Q. Did he say he occupied it? A. No, he didn't say that; he said it was his dwelling, and I suppose a married man, he would probably occupy the building. Q. You inferred that he lived in it? A. Yes, sir. Q. But you didn't know that? A. No, sir. Q. Did you tell ·Mr. Howden that he lived in it? A. No, I didn't know whether he did or not; I just told him it was Mr. Lennox's dwelling, and I supposed it was inside. Q. You described it as a two story tin roof frame dwelling? A. Yes, sir."

If this testimony be true,—and as to that question the jury were the judges,—this is not the case of an insurance company seeking to cast upon the insured the consequences of the crime or blunder of its own agent. If the plaintiff informed Hughes that the building was his dwelling he thereby made the latter his agent to represent that as the fact to the insurance company.

But even aside from this testimony was not the defendant entitled to an affirmance of its first point? We shall consider this question independently of what was said by the Supreme Court when the case was before them; for, as has been suggested, we have no means of knowing that the testimony was the same upon both trials. It appears by all the testimony before us as well as by the express provision of the policy that Hughes was not the company's agent in soliciting the risk. The

policy provides, " In any matter relating to this insurance no person unless duly authorized in writing shall be deemed the agent of this company." It seems that at the suggestion of the plaintiff's father Hughes went to Oakdale for the purpose of obtaining life insurance, as he supposed, he being a life insurance agent, but on seeing the parties he discovered that it was fire insurance that was wanted, and he obtained from the plaintiff the placing of an insurance upon his building. He was not connected with the defendant company in any way or in any other transaction. He was not generally or specially employed by the company's agent to solicit risks. So far as the testimony shows he had not before placed any risks with the company or its agent. He was not even in the fire insurance business. True, he said that he expected to receive his compensation from Howden, the defendant's agent, but it does not appear that the expectation was based on any agreement, understanding or course of dealing.

In view of these undisputed facts and the additional fact that the plaintiff accepted and held the policy without objection, we cannot see that it makes any difference in principle whether Hughes solicited the plaintiff to allow him to obtain insurance on his property or the plaintiff solicited him to obtain such insurance. True the plaintiff denies having made any representations to Hughes, and swears that the latter was not his agent. But this is uncontroverted that the result of their negotiations was—and this is the material thing—that the plaintiff authorized Hughes to obtain insurance on his property, leaving him to select the company and to determine the amount of the policy. He obtained the insurance, and the plaintiff accepted and held the policy without objection. These facts being uncontroverted, the plaintiff could not carry the question to the jury by merely swearing that Hughes was not his agent. This was swearing to a conclusion of law. Upon principle, was not Hughes his agent to procure the insurance, and in making the representations he did to the company's agent as to the character of the building, was he not acting within the scope of his employment? We know there is a class of cases in which it is held that, where an insurance agent employs subagents who go out and solicit risks, he dividing with them his commissions, such subagents are not the agents

of the insured.   But the facts of this case do not bring it within that class.   It seems rather to come within the principle laid down in Pottsville Mut. Fire Ins. Co. v. Imp. Co., 100 Pa. 137. " It is well settled law (says GREEN, J., on p. 143) that where one engages another to procure insurance for him, the person thus employed is the agent of the employer and not of the company."

We are not prepared to say that the description of the building as a " dwelling " was a warranty that it was an *occupied* dwelling, as the defendant's second point would seem to imply: Cumberland Valley Mut. Prot. Co. v. Douglas, 58 Pa. 419; Pottsville Mut. F. Ins. Co. v. Fromm, 100 Pa. 347; Somerset Mut. F. Ins. Co. v. Usaw, 112 Pa. 80.   Therefore we cannot sustain the defendant's third assignment of error.   But if a jury should find that at the time the application was made and the policy was issued to the plaintiff and went into force it was not a dwelling house at all but was a feed store, was not the defendant entitled to an instruction that there was a breach of warranty?   The policy provides : " If an application, survey, plan or *description* of property be referred to in the policy it shall be a part of this contract and a warranty by the insured." Under this clause it would seem difficult to avoid the conclusion that the *description* of the building was a warranty that it was a dwelling which would bind the plaintiff, if Hughes was his agent, and made representations to the company's agent upon the faith of which the building was so described.

The first and second assignments of error are sustained.

The judgment is reversed and a venire facias de novo awarded.