## Wanner *v* Manufacturers & Merchants Mutual Fire Insurance Company, Appellant.

*Trials—Charge to jury—Mis-recital of evidence—Duty of counsel.*

1. Where in an action of assumpsit on a joint policy of fire insurance, the trial judge in his charge to the jury mistakenly attributes certain testimony to the plaintiff, when in fact the testimony referred to was that of plaintiff's agent, but counsel for defendant do not call the attention of the trial judge to the error before the jury retires, they can not take advantage thereof, on appeal.

*Insurance—Fire insurance—Loss—Settlement — Agreement to settle promptly — Breach — Insurance policies — Construction — Charge to jury—Harmless error—Evidence.*

2. Where in an action of assumpsit on a joint policy of fire insurance it appeared that plaintiff's agent, and the adjuster for the insurance companies, inspected the insured buildings which had been damaged by fire, and that a settlement was agreed to, on condition that the money should be paid promptly, but that the companies defaulted in their agreement and neglected to settle for the loss in accordance therewith, the plaintiff was released from the agreement, and could claim the full amount of her loss.

3. Where the policy described the insured building as "occupied as a merchant tailor and steam sanitary cleaning establishment," but permitted the keeping of ten gallons of gasoline on the premises for sale, storage or use, evidence showing that gasoline was used in connection with steam for cleaning, and that "in steam cleaning no gasoline is necessary," did not support defendants'

contention that the building was used for "dry" cleaning, nor for "steam cleaning," particularly where the witness called to sustain this contention said that "possibly all steam cleaning establishments use gasoline," and the court made no error in charging the jury that "there is no testimony here showing that this building was used for a different purpose than that named in the policy."

4. In such case, it was not reversible error to charge the jury that the measure of damages was "what would be the cost to repair this building and put it in the same condition that it was in at the time of the fire," where the witnesses who testified to the cost of repairing the building also testified to the actual cash value of the property destroyed, and estimated that the amount in either case would be $1,475, for which sum the jury found a verdict.

5. It was not error to refuse an offer made by defendants to show the amount of gasoline delivered to the tenants of the premises between December 7th and December 26, 1911, on which latter date the fire occurred, where it appeared that the policy was not issued until December 23, 1911, and there was no offer to prove by affirmative evidence that more than ten gallons of gasoline was kept on the premises in violation of the terms of the policy.

Argued Feb. 16, 1914. Appeal, No. 68, Jan. T., 1913, by defendants, from judgment of C. P. Lycoming Co., Sept. T., 1912, No. 127, on verdict for plaintiff in case of Katharine Wanner, individually as widow of and as executrix and trustee of and devisee under the last will and testament of Adam Wanner, deceased, v. Manufacturers and Merchants Mutual Fire Insurance Company, United States Merchants Mutual Fire Insurance Company, Exchange Mutual Fire Insurance Company and the Provident Mutual Fire Insurance Company, corporations of the State of Pennsylvania. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit upon a joint policy of fire insurance. Before WHITEHEAD, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,525.65, and judgment thereon. Defendants appealed.

*Errors assigned* were instructions to the jury, answers to points and rulings on evidence.

*H. B. Gill,* with him *J. T. Fredericks* and *W. B. Linn,* for appellants.

*Seth T. McCormick, Jr.,* with him *H. T. Janney* and *Seth T. McCormick,* for appellee.

OPINION BY MR. JUSTICE POTTER, April 20, 1914:

The four defendants here named were sued upon their joint policy of insurance, by which they insured the Adam Wanner estate, against loss or damage by fire, to a one story frame shingle and metal roof building, occupied as a merchant tailor and steam sanitary cleaning establishment. After the policy was issued, a fire occurred upon the insured premises. Notice was given to the insurance companies, and their adjuster inspected the damaged building. He made an estimate of the net loss, which was not satisfactory to Katharine Wanner, the executrix of the last will of Adam Wanner, deceased, but she agreed to accept the sum named by the adjuster in full settlement, on condition, as she alleged, of prompt payment, and she then signed and swore to a proof of loss. This proof disappeared and was not offered in evidence. The loss was not paid promptly and Mrs. Wanner was compelled to bring the present suit to recover the amount of the loss. The trial in the court below, resulted in a verdict of $1,525.65 upon which judgment was subsequently entered. Defendants have appealed. Their counsel have filed six assignments of error. The first five are to the charge and answers to points, and the sixth is to the exclusion of an offer of evidence made by defendants. The first assignment of error is to a portion of the charge in which the trial judge mistakenly attributed certain testimony given upon the trial, to the plaintiff, when as a matter of fact the testimony to which reference was made was that of

John Villinger, nephew and agent of the plaintiff. If at the time, defendants' counsel had regarded this error in stating the source of the evidence as material, they should have called the attention of the trial judge to it before the jury retired in order that it might have been corrected. Not having done so they cannot now take advantage of it. In Newingham v. J. C. Blair Co., 232 Pa. 511, we said (p. 516) : "If, in the opinion of counsel for defendant, a mistake was made, (in quoting or referring to testimony) it should have been brought to the attention of the court before the jury retired; otherwise, the matter is not assignable for error: Kuntz v. N. Y., Etc., R. R. Co., 206 Pa. 162; Com. v. Razmus, 210 Pa. 609." The witness, Villinger, testified that he and the adjuster looked the building over and discussed the amount of the damage. They had some argument about it, mainly as to the deduction made by the adjuster on account of damage from explosion. The adjuster made the net loss $881.65. Witness stated, "He gave me to understand that the company would accept that and make a prompt settlement." Witness then went to see plaintiff and told her what had taken place between himself and the adjuster and she said, "if that is the best they will do and they will pay this promptly I will accept it." The witness stated that she authorized him "to make that kind of a settlement." No objection seems to have been taken to this testimony of Villinger's, and it seems to fully justify the language used in the charge, with the exception that the trial judge mistakenly stated that the plaintiff had testified to these facts. It does not appear from the evidence that Villinger communicated what plaintiff had said to him either to the adjuster or to the companies. The adjuster was, however, called as a witness in behalf of defendants and he made no denial of the testimony offered by Villinger. As a matter of fact the companies did not make a prompt settlement of the loss, but allowed themselves to be sued therefor. The verdict shows that the jury believed the testimony of

Villinger, to the effect that the adjuster gave him to understand that the company would accept the adjustment, and would make a prompt settlement of the loss; and further that the adjustment was made upon the faith of this representation. If the agreement as to prompt settlement was not kept, the result was to release the plaintiff from the agreement. We see nothing in the so-called "non-waiver" agreement, which in any way affects plaintiff's right to recover the full amount of her loss. Its effect was merely to preserve to both parties, all rights which either might have under the policy, notwithstanding the adjustment of the amount of the loss. If the adjustment came to naught, by the failure of the defendants to make good the representation of the adjuster as to prompt payment, there is nothing in the "non-waiver" agreement to prevent plaintiff from claiming the actual amount of her loss. In the fourth assignment, error is alleged in the answer to defendants' first point in which the judge said to the jury, "there is no testimony here showing that this building was used for a different purpose than that named in the policy." In the policy the building was described as "occupied as a merchant tailor and steam sanitary cleaning establishment." The evidence showed that gasoline was used in connection with steam for cleaning. It was contended that this made it a "dry cleaning" establishment and not a "steam cleaning" one. The witness, however, who was called to sustain this contention merely testified "that in steam cleaning no gasoline is necessary whatever." But he admitted on cross examination that "possibly all steam cleaning establishments use gasoline." The policy sets forth that "permission is hereby given where not in violation of any law, statute or municipal restriction, to use gasoline......in the building herein described, and to keep in the building or within five (5) feet of same for sale, storage or use, not to exceed ten (10) gallons of gasoline." In Franklin Fire Ins. Co. v. Brock, 57 Pa. 74, it was held as set forth in the syllabus that "describ-

ing a building as a 'storehouse' is descriptive only, and not a warranty or representation that nothing should be done in it but keeping a store or a storehouse." In Cumberland Valley Mut. Prot. Co. v. Douglas, 58 Pa. 419, Mr. Justice Strong said (p. 422): "And even if the building be insured as an occupied dwelling-house, even if application be made for a policy on an occupied dwelling-house, while it might amount to a false representation if the property was unoccupied at the time, it is not an assertion that it shall remain unoccupied. It is matter of description of the subject, rather than stipulation respecting its use." We see no merit in the fourth assignment of error. In the fifth assignment it is alleged that the court erred in instructing the jury that the measure of damages was, "what would be the cost to repair this building and put it in the same condition that it was in at the time of the fire." Counsel for appellant argue that the "actual cash value was the proper measure of damages" and says "that the plaintiff gave no evidence as to this." This statement seems to be a mistake. It appears from the record that the witnesses who testified to the cost of repairing the building also testified to the actual cash value of the property destroyed. They made two estimates of the same amount, $1,475.00, and this was the amount of the verdict of the jury. Defendants offered no testimony in contradiction of these estimates, but relied entirely on their claim that the loss had been adjusted. The sixth assignment of error is to the exclusion of an offer made by defendants to show the amount of gasoline delivered to the tenant on the premises, between December 7 and December 26, 1911, the latter being the date of the fire. The offer was made "for the purpose of showing the quantity of gasoline which might have been or was upon the premises after the issuing of the policy." As the policy was not issued until December 23, 1911, this offer was clearly inadmissible and was properly excluded; but at any rate it would not have been sufficient for defendants to show

the quantity of gasoline which might have been on the premises. In order to avail themselves of the defense that more than ten (10) gallons, was kept in the building in violation of the terms of the policy they must have been made it appear by affirmative evidence.

The assignments of error are overruled and the judgment is affirmed.