FRANKLIN LIFE INSURANCE COMPANY *v.* GALLIGAN.

Opinion delivered March 14, 1903.

1. LIFE INSURANCE—WARRANTIES IN APPLICATION.—Where the answers given in an application for insurance are warranties, questions as to how long since the applicant was attended by a physician, and as to the nature of the ailment, must be construed as referring to some ailment that would affect the contract of insurance, and the failure of the applicant to mention a mild bilious attack did not avoid the policy. (Page 298.)

2. SAME—ESTOPPEL.—Knowledge on the part of the examining physician that the answers written down by him in an application for a policy are false estops the insurance company from forfeiting such policy on account of such false answers. (Page 299.)

3. SAME—WHEN WARRANTY NOT BROKEN.—Where, to an inquiry as to what physician attended him in his most recent illness, an applicant for insurance gave the name of the physician who attended him during the latter and greater portion of his last illness, without naming the physician who had attended him earlier, there was no breach of warranty. (Page 299.)

4. WARRANTIES—USE OF LIQUORS AND TOBACCO.—A question in an application for a policy of life insurance as to whether the applicant uses any ardent spirits or tobacco will be construed to refer to customary and habitual use, not to a single or incidental one. (Page 299.)

5. CONFLICT OF LAWS—PLACE OF CONTRACT.—A policy of insurance, by its terms to be performed in Missouri, is a Missouri contract, and governed by a statute of that state providing that no misrepresentation made in obtaining a policy of life insurance shall render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due. (Page 300.)

6. VESTED RIGHTS—AMENDMENT OF STATUTE.—Where a statute of Missouri providing that misrepresentations in applications for life insurance should not avoid the policy unless they contributed to the contingency on which the policy was to become payable was amended so as to make it aplicable to citizens of Missouri alone, such amendment did not affect a non-resident policy holder whose policy was issued prior to the amendment. (Page 300.)

7. SAME—RIGHT TO CHANGE BENEFICIARY.—The interest of a beneficiary in a policy of ordinary life insurance is vested by the terms of the contract, and the assured cannot change the beneficiary without authority derived from the contract itself. (Page 301.)

Appeal from Jefferson County Circuit Court.

ANTONIO B. GRACE, Judge.

Consolidated actions by R. A. Galligan and W. P. Lawton against the Franklin Life Insurance Company. From a judgment for plaintiff Galligan, defendant and the other plaintiff appeal. Reversed in part.

STATEMENT BY THE COURT.

On March 6, 1899, the Merchants' Insurance Company of the United States, a Missouri corporation, with general offices in St. Louis, Mo., issued and delivered to one Stephen Galligan its policy of insurance, by which it agreed to pay the beneficiary therein named the sum of $3,000 upon proof of death of said Galligan. The said policy was signed by the president and secretary, and the corporate seal was affixed, at St. Louis, Mo. It was stipulated therein that the premiums should be paid at the home office, unless otherwise authorized by the association's receipt, signed by the secretary; and, upon death of insured, it agreed to pay to the beneficiary, "at the home office of the association in the city of St. Louis, state of Missouri, three thousand dollars." The beneficiary, Mary V. Galligan, died on the 24th day of April, 1899, and thereafter Stephen Galligan made the following indorsement upon said policy: "Owing to the fact that my late wife, Mary V. Galligan, departed this life at Tucker, Arkansas, on the 24th day of April, 1899, it is my desire and wish that this policy be paid to my son, Willie P. Galligan; that is to his legal representatives, appointed by me or the proper court. This 22nd day of June, 1899. S. Galligan, Insured." Stephen Galligan died on August 7, 1899, and, notwithstanding proofs of his death were submitted to the Franklin Insurance Company, which company had assumed the insurance, it refused to pay the loss, claiming that the policy was void from its inception, on account of misrepresentations made by assured in obtaining the same. Suit was thereupon brought by R. A. Galligan as guardian for appellee, who claimed as the heir of S. Galligan, and as substituted beneficiary under the policy; and a suit on the same policy was instituted by cross-appellant, W. P. Lawton, who

based his claims as the heir of his daughter, Mary V. Galligan, the original beneficiary named in the policy. To the complaints above, the company filed its answers, in which it admitted the execution and delivery of the policy and the death of Galligan, and rested its defense upon the following misrepresentations, which it claimed were made by Galligan in obtaining the policy, and which consequently rendered the policy void: (1) That in answer to the question, "How long since you were attended by a physician, or had occasion to consult one?" the deceased replied, "1893." (2) That in answer to the question, "State the nature, gravity, and duration of the ailment or disease," the defendant replied, "Typhoid fever; four weeks." (3) That in answer to the question, "Give the name and address of the physicians," the deceased replied, "R. W. Lindsay, Little Rock, Ark." (4) That in answer to the question, "Do you use ardent spirits, wine, or malt liquors?" the deceased replied, "No." (5) That in answer to the question, "Do you smoke or use tobacco?" the deceased replied, "No."

The proof showed that Dr. Edwin T. Pry, a physician who lived at Tucker, who had been employed by the agent of the insurance company to examine Galligan, and who wrote down all of the answers of Galligan to the questions in the application, had during the month of August, 1898, attended Galligan on two separate occasions, at which time he found him suffering "with a mild remittent fever or bilious fever—a mild bilious attack." Dr. Pry further testified, however, that at the time he prepared the application he remembered the attack, and at that time he had certified that it had in no manner affected Galligan's constitution. He stated he did not remember whether or not he called Galligan's attention to this illness, or whether Galligan mentioned the fact of this illness to him, but as he frequently tells applicants, when they mention a mild illness, like that one, they should mention something more serious, it might be possible that Galligan called his attention to this illness, and he did not note it, as he did not consider the bilious attack of sufficient import to be included in the application, and therefore had, with full knowledge of that attack, certified that no previous illness of Galligan had in any manner affected his constitution.

The two cases were consolidated, and a common fight was made by both plaintiffs against the insurance company. The verdict was in favor of plaintiff Galligan against insurance company and Lawton, and they both appeal.

*Austin & Taylor,* for appellant.

*White & Altheimer* and *F. T. Vaughan,* for appellee, Galligan.

*Cypert & Cypert* and *Bridges & Wooldridge,* for cross-appellant, Lawton.

WOOD, J., (after stating the facts). By the contract of insurance the answers given in the application are warranties. If untrue, they avoid the policy. But they must be construed in the sense contemplated by the parties to the contract. By the questions, "How long since you were attended by a physician, or had occasion to consult one?" "State the nature, gravity, and duration of the ailment or disease," and "Give the name and address of that physician," and the answers thereto, the parties had in view some ailment or disease that would affect the contract of insurance. They did not, evidently, have in mind some slight indisposition, or trivial and temporary ailment, that in no wise affected the general health or constitution of the assured, and therefore did not increase the risks of insurance. In *Providence Life Assurance Society* v. *Reutlinger,* 58 Ark. 528, 25 S. W. 835, the court said: "Where questions propounded to an applicant for insurance upon his life as to his physical condition are in such terms as include the most trivial ailments or injuries, they should be interpreted as referring only to such illness or injuries as affect the risk to be assumed, unless they are in words which exclude such interpretation. The presumption is that trivial ailments or injuries are not within the contemplation of the parties, and that the questions, in the absence of words directing attention to them, are not asked with the view or purpose of ascertaining the existence of the same. The answers of the applicant should be interpreted in the same manner as the questions eliciting them; that is to say, as responsive to the questions in the sense in which they are asked." The fact, therefore, that the assured had since 1893 a "mild remittent or bilious fever," and was attended during this illness by another physician than Dr. Lindsay, did not falsify the answers to the questions in the application *supra,* because Dr. Pry, the physician who attended him during this sickness, testified that "he was not very ill; having mild remittent or bilious fever, that did not affect his constitution." Moreover, Dr. Pry, the witness who attended the assured during this illness, was also the examining physician for the company, who propounded the questions to the assured in the application, and took down his

answers. Being fully cognizant of the fact that the assured had been ill with bilious fever since 1893, and that he attended him for such illness, he should not have permitted the assured to have given false answers, which he knew would forfeit his policy. The fact that the assured answered the questions as he did, and that its physician took them down as the assured gave them, shows that they both concluded that the bilious attack of 1898 was not within the scope of the question in the application, and did not affect the question of insurance. Even if it had been material to the contract of insurance, the knowledge of the physician, the company's agent, under such circumstances, was the knowledge of the company; and the company would be estopped from taking advantage of any false answers to forfeit the policy, when it knew the same to be false at the time the contract was executed. *Dwelling House Ins. Co.* v. *Brodie,* 52 Ark. 11, 11 S. W. 1016, 4 L. R. A. 458. See, also, *Pudritzky* v. *Sup. Lodge K. of H.,* 76 Mich. 428, 43 N. W. 373; *Miller* v. *Mutual Ben. Life Co.,* 31 Iowa, 216, 7 Am. Rep. 122.

The fact that the assured failed to disclose the name and address of one Dr. A. L. McLard, who attended him the first four or five days during his illness with typhoid fever, did not falsify the answer that Dr. R. W. Lindsay, of Little Rock, was the physician who attended him. The question was, "Give the name and address of that physician." It does not require the name and address of all the physicians that might have been in attendance upon him during a serious illness. Dr. McLard attended the assured only during the first four or five days of his illness, when he was removed to Little Rock, where Dr. Lindsay was called and attended him during the remainder of his illness—something over three weeks. The assured correctly answered that Dr. Lindsay, of Little Rock, was the physician who attended him, and gave by such answer all the information called for by the question. The object of the question was to apprise the company of the name of a physician who was in attendance, and who would know about the nature of the disease and the effect it may have had upon the constitution of the one who was contemplating insurance. If the question had called for the names of the physicians who attended him, there might be some room for the contention.

As to the use of liquors and tobacco, the question called for the habit of the assured in these respects at the time of the application, and there was proof to sustain the finding that at that time the assured was not addicted to their use. It was held in *Van Valken-*

*burg* v. *Life Ins. Co.,* 70 N. Y. 605, that the question, " 'Did the insured use any intoxicating liquors or substances?' did not direct the mind to a single or incidental use, but to a customary or habiiual use."

2.  But even if there were a breach of warranty by the assur‹ in the matters discussed *supra,* still appellant could not avail itself of such breach, under a statute of Missouri, which is as following: "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contribute in any case shall be a question for the jury." The proof justified the conclusion that the company taking the insurance was a Missouri corporation; that the contract of insurance was a Missouri contract, to be performed in Missouri. Therefore the laws of Missouri governed in its enforcement. *State Ins. Ass'n* v. *Brinkley Stave Co.,* 61 Ark. 5, 31 S. W. 157, 29 L. R. A. 712, 5 Am. St. Rep. 191; *Seiders* v. *Merchants' Ins. Co.* (Tex. Sup.) 54 S. W. 753. Since the law of Missouri governs, the only question is, did the matters alleged to have been misrepresented contribute to the death of the assured? This question was properly submitted to the jury, and their verdict should stand. The appellant contends that the above statute was not applicable, because since its enactment it had been amended so as to make it applicable alone to citizens of Missouri, and that the statute as amended should apply to the enforcement of the contract. We cannot adopt that view. The law in force when the contract was made entered into it, and conferred upon the assured and the beneficiary under the contract rights which subsequent legislation could not annul. The right vested by this law not to have the contract forfeited by any matter misrepresented, unless such matter contributed to the contingency on which the policy became payable, was a most important one, and, for aught we know, the one that controlled in the making of the contract. But for this right we are not warranted in saying that the assured would have entered upon the contract at all. What was said by the court in *St. L., I. M. & So. Ry* v. *Alexander,* 49 Ark. 190, 4 S. W. 753, is apposite here: "It is not material to ascertain whether the provision of the act of 1883 which is relied upon was intended to be retroactive in its operation or not. The plaintiff's right to recover all that was adjudged to him had vested before the repealing

act was passed. The law in force when the sale was made, regulating its obligations and defining the rights and duties of the purchaser—all the provisions beneficial to him and constituting a material inducement to the purchase—entered into and became a part of his contract, and passed beyond the legislative control." The instructions of the court were correct, and judgment against the company was correct. This determines the controversy as to appellant.

3. The remaining question is to determine whether appellee, Galligan, or cross-appellant, Lawton, should recover. This question, we think, is settled in favor of cross-appellant by the decisions of this court in *Block* v. *Valley Mut. Ins. Co.* 52 Ark. 201, 12 S. W. 477, 20 Am. St. Rep. 166; and *Johnson* v. *Hall,* 55 Ark. 210, 17 S. W. 874. These were cases against mutual benefit societies. In the first case we said: "But, regardless of the character of the company, the rights of persons claiming insurance arise out of and depend upon contract. * * * When the courts are invoked, the contract measures the rights of one and the obligation of the other party, and relief must be granted, if at all, according to its terms." In both of the above cases we held that the holder of a policy in a mutual benefit society cannot change the beneficiaries named therein, unless expressly authorized to do so by the policy itself, or by the articles of association or by-laws of the society, where these are by the terms of the policy made a part of it. If this doctrine be sound as to mutual benefit societies, *a fortiori* must it be when applied to regular life policies issued by an ordinary life insurance company. If the rights of the beneficiary are so vested by the contract as to preclude the assured from changing the beneficiary while she is living, then the assured certainly could not name another beneficiary after her death. Upon the death of the beneficiary, the law, *eo instanti,* fixes the devolution of her rights. The right to recover on the policy was a chose in action expectant or contingent upon the death of the assured, which passed upon the death of the beneficiary like any other of the personal assets. These, under our statute, do not pass to the husband, as did choses in action of the wife not reduced to possession during their joint lives, under the common law, but they go to her estate. Section 4946, Sand. & H. Dig.; also section 2470, par. 2. Such we believe to be the logical sequence of the doctrine that the interest of a beneficiary in a policy of life insurance is vested by the terms of the contract, and that the assured cannot change the beneficiary without authority derived from the contract itself. The decisions are not har-

monious, but the doctrine of our own court is supported by eminent authority, and is, perhaps, the prevailing rule. 2 Am. & Eng. Enc. Law (2d ed.) pp. 980, 987; *Drake* v. *Stone,* 58 Ala. 133; 1 Bacon, Ben. Soc. & Life Ins. §§ 292 to 294, and cases cited; Cook, Life Insurance, and cases cited; 2 Joyce, Ins. § 828.