MUDGE *v*. SUPREME COURT INDEPENDENT ORDER OF FORESTERS.

1. LIFE INSURANCE—APPLICATION FOR POLICY—BREACH OF WARRANTY—WAIVER.

Where an applicant for a life-insurance policy intentionally falsified in giving his answers to questions concerning his health in the past, the facts that both the agent who took the application and the physician who made the examination knew the answers were false, notwithstanding which they wrote the answers as given, do not constitute a waiver, or estop the company from denying the truth of the answers.

2. SAME—ACTION ON POLICY—BREACH OF WARRANTY—EVIDENCE —SUFFICIENCY—PRESUMPTION ON APPEAL.

Where a life-insurance policy makes the by-laws of the company a part of the contract, the failure of the company to offer the by-laws in evidence in an action on the policy will not require reversal of a judgment in its favor, the judgment being founded on a breach of promissory warranty sufficiently shown by the physician's examination and the policy.

Error to St. Clair; Law, J. Submitted June 11, 1907. (Docket No. 72.) Decided September 20, 1907.

Assumpsit by Elizabeth Mudge against the Supreme Court Independent Order of Foresters upon a benefit certificate. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*John B. McIlwain*, for appellant.

*Elliott G. Stevenson* (*Cyrus A. Hovey*, of counsel), for appellee.

HOOKER, J. The plaintiff in this cause is a widow, and beneficiary in a fraternal benefit certificate. Her action is brought to recover the amount thereof, and is predicated upon the death of her husband. The defense

is reduced to one claim, viz., that the deceased made an intentionally false answer, in his medical examination, to the question "Have you ever had the disease of insanity?" Upon the trial the learned circuit judge was of the opinion that the undisputed testimony established this defense, and he therefore directed a verdict for the defendant and afterwards denied a motion for new trial. The plaintiff has appealed.

The undisputed testimony shows that the insured had previously been insane, and confined in the asylum as insane, for three months, upon an adjudication by the probate court that he was insane, based upon an application sworn to and filed by this plaintiff stating that he was insane. It also shows that he had delusions, and that he had attempted suicide twice. It appeared with equal conclusiveness that he knew that he had been confined and treated as insane, and there was no testimony that he stated these facts to the agent or examining physician and was not a party to the insertion of the false answer in the application or report of the examining physician. On the contrary it was shown that his answers were faithfully recorded. There is no occa 'on to allude to the attempted discrimination between "insanity" and the disease of insanity under the facts in this case. Hence we find that upon this record, the judge was warranted in saying that the proof established the insured's insanity, his knowledge of and fraudulent concealment of the same. There can be no question that this was sufficient to deprive his beneficiary of the right to recover, unless the company was estopped to assert the claim by reason of the alleged knowledge of its agents, or by a waiver.

It is contended that there was evidence tending to show that both the agent who took the application, and the physician who made the examination, knew, at that time, that the insured had been insane, and that his answers were false, and that this was the knowledge of the defendant, and is sufficient to estop it from denying the truth of the answer. Were this a case where the insured

had made no misrepresentation in his answer, and was excusably ignorant of fraudulent conduct on the part of the company's agent in inserting an answer different from that given, there might be reason for this claim. In this case the most that plaintiff's counsel could possibly contend, is that, by collusion between the applicant and defendant's agent, they made a false answer, and now seek to hold the company, by making a "sword instead of a shield" out of the salutary rule, that the knowledge of the agent is notice to the principal. Good faith is always essential to an estoppel.

In *American Ins. Co.* v. *Gilbert,* 27 Mich. 428, where the insured answered truly, but the agent inserted a false statement, *with his knowledge,* stating that it was right, and the insured signed, *honestly believing* that *it was* right, this court in reversing a judgment for plaintiff said :

"The very form and obvious purpose of the application with the consideration contained in it, showed that the statements it contained were to be understood as made by the applicant and upon his responsibility, as the basis of the contract of insurance he expected to obtain. And, though a person ignorant of the meaning of the particular terms of special provisions used in such papers, or in the policy, or of the sense attached to them by the insurers, or of the particular rules or manner of doing business, has a right to rely on the instructions and assurances of the agent of such insurers, and upon his acts in reference to such matters, in filling out the application; yet he cannot, therefore, escape the responsibility for the statement of facts which he inserts himself in the application, or permits the agent to insert, as his, upon which he is just as well informed as the agent himself."

In the case of *Michigan Mut. Life-Ins. Co.* v. *Reed,* 84 Mich. 532, the court said :

"If the insured had no information of the agent's misrepresentation, the company could not take advantage of the wrong of its agents and avoid the policy, but that it would have been otherwise had the insured conspired with the agent or had the insured, being fully informed of the

representation made and the contents of the application, neglected to bring it to the attention of the company."

In the recent case of *Ketcham* v. *Accident Ass'n,* 117 Mich. 521, Mr. Justice MOORE said, with the approval of the full bench, that—

"It is urged that, as the agent knew the answers were not true, his knowledge was the knowledge of the company, and, having issued the policy, the company is bound.   The courts have always been anxious to take care of the rights of the assured when the applicant has relied upon the agent informing the company what had been truthfully told to him about the character of the risk; but the courts never have said the company is bound by statements contained in an application, when not only the agent, but the assured, knows they are untrue, and calculated to deceive, and the application is to be forwarded to the company as the basis of its action.   To so hold would put these organizations completely at the mercy of dishonest and unscrupulous agents."

In the case of *Maier* v. *Life Ass'n,* 24 C. C. A. 243, 78 Fed. 570, Mr. Justice Harlan used the following vigorous language:

" It was said in argument that the company should not be permitted to take advantage of the misconduct or wrong of its own agent.   But the law did not prohibit the company from taking such precautions as were reasonable and necessary to protect itself from the frauds and negligence of its agents.   If the printed application used by it had not informed the applicant that he was to be responsible for the truth of his answers to questions, and if the want of truth in such answers was wholly due to the negligence, ignorance, or fraud of the soliciting agent, a different question would be presented.   But here the assured was distinctly notified by the application that he was to be held as warranting the truth of his statements 'by whomsoever written.'   Such was the contract between the parties, and there is no reason in law or in public policy why its terms should not be respected and enforced in an action on the written contract.   It is the impression with some, that the courts may in their discretion, relieve parties from the obligations of their contracts, whenever it can be seen that they have acted heedlessly or carelessly in making them, but it is too often forgotten

that in giving relief, under such circumstances, to one party, the courts make and enforce a contract which the other party did not make or intend to make. As the assured stipulated that his statements, which were the foundation of the application, were true, by whomsoever such statements were written, and as the contract of insurance was consummated on that basis, the court cannot, in an action upon the contract, disregard the express agreement between the parties, and hold the company liable, if the statements of the assured—at least, those touching matters material to the risk — are found to be untrue."

In *New York Life-Ins. Co.* v. *Fletcher*, 117 U. S. 519, Mr. Justice Field said:

" A curious result is the outcome of the instruction. If the agents committed no fraud, the plaintiff cannot recover, for the answers reported are not true; but if they did commit the imputed fraud, he may recover, although, upon the answers given, if truly reported, no policy would have issued. Such anomalous conclusions cannot be maintained."

There are many decisions elsewhere which refuse to apply the rule of estoppel in cases of this kind. 3 Cooley's Briefs on Insurance, p. 2569; *Welsh* v. *Assurance Corp.*, 151 Pa. 607; *Pottsville Mut. Fire-Ins. Co.* v. *Fromm*, 100 Pa. 347; *United States Life-Ins. Co.* v. *Smith*, 34 C. C. A. 506; *Clemans* v. *Supreme Assembly R. S. of G. F.*, 131 N. Y. 485 (16 L. R. A. 33); *Boyle* v. *Relief Ass'n*, 95 Wis. 318; *Provident Sav. Life Assurance Society* v. *Llewellyn*, 7 C. C. A. 581 (22 L. R. A. 620).

The case of *Perry* v. *Insurance Co.*, 143 Mich. 295, 147 Mich. 645, is said to establish for this State a different rule and to have overruled the three cases quoted from. Upon its first hearing that case might have turned either on the question of waiver, or on the substantial truth of the answer; it appearing that there was evidence that defendant's agent knew the insured's character when he wrote the policy, and the company's superintendent afterwards collected premiums with knowledge of her occupa-

tion.   We held there that unless the warranty that she was a housewife was substantially true, or its truth waived, the policy was void, and that these were questions for the jury.    It is a legitimate conclusion that although she maintained a bawdy house, which the court said was incontestably proved, that it did not necessarily follow that her statement that she was a housewife and had not been in any other occupation for two years was not substantially true.    One of the definitions of housewife, viz., " a female manager of domestic affairs," was quoted in the opinion."

Upon a second trial the claim that defendant's superintendent collected premiums was eliminated upon this question.    The learned circuit judge instructed the jury:

" It does not seem to me that it is a conclusive question, because I think if the money was paid—if the agent at the time he took this application knew of her character and they gave her occupation as housewife, instead of prostitute, that I still think the company would be liable, and in this case I do not think the question is a conclusive question."

This was sustained.    It cannot be denied that this gives plausibility to the claim that defendants make, viz., that although both insured and agent knew of her disreputable character and the omission to state it, the knowledge of the agent estopped the defendant.    It should be considered, however, in the light of the previous opinion, viz., that her answer might be found substantially true, i. e., that she was a housewife, and that she had not engaged in other occupations within two years.    This part of the charge related to the question of waiver, which the court held was not the only question in the case.    If he had used the word "might" instead of "would" the decision would not have the significance contended for, and it is quite probable that this language may have been qualified by other portions of the charge relating to the other question in the case.    Counsel pertinently suggest that no allusion was made to the cases quoted from.    They

could not well have been overlooked and would not have been ignored had there been an intention to overrule them.

Counsel have raised the further point that the defense should have been held to have failed for another reason. The by-laws formed a part of the contract, and were not offered in evidence by the defendant. The policy and the physician's examination were sufficient to show the breach of contract, and if plaintiff's counsel had claimed that the by-laws would have shown the contrary they would doubtless have produced them. To reverse the judgment upon this ground would be to do so for a very technical reason or upon a presumption that the by-laws nullified the express provisions of the policy. The plaintiff has failed to show any error, and the judgment is affirmed.

MCALVAY, C. J., CARPENTER, GRANT, and MOORE, JJ., concurred.