HUTCHINS *v.* GLOBE LIFE INSURANCE COMPANY.

Opinion delivered December 11, 1916.

1.  LIFE INSURANCE—WARRANTIES AS TO HEALTH—KNOWLEDGE OF COMPANY PHYSICIAN.—Where the physician representing an insurance company had knowledge that the applicant for insurance whom he was examining, was subject to epilepsy, his knowledge will be imputed to the company, and it can not complain that the applicant was guilty of a breach of warranty.

2.  LIFE INSURANCE—NONPAYMENT OF PREMIUM NOTE—EXTENSION OF TIME BY AGENT.—Where the assured gave his note to an agent in payment of a premium on a policy of life insurance, where the agent had authority to take such notes in his own name, and where the policy provided for a forfeiture for failure to pay premiums promptly, it is a question for the jury whether the agent extended the time of payment, and whether he had authority to do so, and it is error to withdraw those questions from the jury.

Appeal from Woodruff Circuit Court; *J. M. Jackson*, Judge; reversed.

*Dunaway & Chamberlin*, for appellant.

1. The first annual premium was paid. If not, the time was extended and the time was waived. Having elected to waive, the company is estopped afterward to claim a forfeiture. 49 Ark. 215; 37 *Id.* 47; 112 *Id.* 178; 67 *Id.* 588; 53 *Id.* 500; 150 S. W. 978; 129 Pac. 865.

No notice of cancellation of policy was given. 72 Ark. 47.

2. Hutchins could neither read nor write. The examining physician wrote the answers, and he knew the facts. The knowledge of the agent was the knowledge of the principal and the company is estopped to claim a forfeiture. 71 Ark. 295.

3. The limitation is void by § 4380, Kirby's Digest.

4. It was error to direct a verdict.

*Hawthorne & Hawthorne* and *D. K. Hawthorne*, for appellees.

1. The first premium was not paid and the policy was forfeited. 112 Ark. 171; 92 *Id.* 385; 85 *Id.* 337; 75 *Id.* 25; 74 *Id.* 507; 104 *Id.* 288.

2. The applicant's answers were warranties, and they were false. They avoided the policy. 58 Ark. 528; 71 *Id.* 295. A verdict was properly directed. 72 Ark. 620; 82 *Id.* 400.

3. The policy was automatically cancelled when the note was not paid. Notice was mailed. 72 Ark. 27.

SMITH, J. This is a suit to collect a policy of insurance on the life of Charles H. Hutchins, who died February 4, 1914. The issuance and delivery of the policy by the company is admitted; but it denies any liability thereunder, for the reason, first, that the insured had failed to state that he was afflicted with epilepsy at the time of his examination for his insurance, and for the reason, second, that the insured failed to pay

his note given in payment of the first annual premium. At the conclusion of the evidence, the court directed a verdict in favor of the insurance company, and this appeal has been prosecuted from that judgment.

(1) It is admitted that the answers contained in the application for the insurance did not disclose the fact that the applicant had epilepsy and that these answers were made warranties. The insured was an illiterate man who could neither read nor write, and there was proof to the effect that the examining physician for the insurance company had attended and treated him for epilepsy, and knew of his condition. While this testimony was not undisputed, there was testimony sufficient to support a finding to that effect, and the jury might have so found had the determination of that question been submitted. If, in fact, the doctor had this knowledge when he wrote down a false answer, his knowledge is imputed to the company, and it can not now be heard to say there was a breach of the warranty. *Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295; *Gray* v. *Stone,* 102 Ark. 146; *Woodmen of the World* v. *Hall,* 104 Ark. 538; *Peebles* v. *Eminent Household of Columbian Woodmen,* 111 Ark. 435; *Peoples' Fire Ins. Assn.* v. *Goyne,* 79 Ark. 315.

It is admitted that the note given for the premium was past due and unpaid at the time of the death of the insured, and that the policy provided that the contract of insurance should be void in this event. It is said, however, that this failure to pay the note, which would ordinarily have avoided the policy, did not have that effect here for the reason that the company's agent had agreed to an extension of the time of payment to a date beyond that on which the insured died. It is said for appellee that upon the maturity of the note its collection was attempted but, failing to collect it, a letter was written to the insured that the policy was cancelled and the policy was entered upon the record of the cancelled policies. It is further insisted that the agent had no authority to extend the time of payment of a past due note, and that he had not, in fact, done so.

The secretary of the insurance company testified that he entered the cancellation of the policy upon the company's record provided for that purpose and on January 20, 1914, wrote the insured advising him of that fact. There was no proof, however, that the letter was mailed, and there is affirmative proof by a brother of the insured that he read for his brother all letters received by him, but this brother had never seen the letter in question, and no such letter was found among the insured's effects.

Appellant offered in evidence a contract between the insurance company and the Globe Agency Company a corporation organized for the purpose of writing insurance for appellee, whereby the agency company was given an exclusive contract to write insurance for the company, and in consideration therefor agreed to write a stated amount of insurance and to receive as compensation a fixed per cent. of the first annual premium, all of which it was to collect, and, after deducting its own per cent. to pay the balance to the insurance company. The secretary of the appellee insurance company testified that the agency company received the moneys and credits and required the agents of the agency company to pay the net amount to carry their actuary insurance at Little Rock for the year. This amount the agent was required to pay into the life insurance company, and "the balance of the premium could be handled in a way that would be satisfactory to all concerned. That we were anxious for the agents to do well and if an agent got short, the agency company would finance him, but we invariably required the agent to pay the net insurance." He further stated that he also knew that one Riddle, a soliciting agent, had taken this premium note in his own name, and this was done in accordance with the rule of the insurance company, and that as Riddle had authority to take the note in his own name, he was liable to the company for its part of the premium when he had done so. He also testified that this note showed on its face that it was given for insurance, but did not state the particular insurance; while

another agent of the appellee who had the note for collection testified that the note did not recite the consideration for which it was given; but both agree it was payable to Riddle's order. The note was last accounted for as being in the hands of an agent of the insurance company for collection, but it was not produced at the trial. Riddle was agent for both the insurance company and the agency company, and had taken the application upon which the policy in suit was issued and the note given in payment thereof.

Appellants offered to prove by four witnesses that Riddle, in soliciting their applications for insurance, and by way of inducement to witnesses to become policy holders, had assured them that he had extended the time for the payment of the note given him by Hutchins until the fall of 1914; but the court excluded this evidence.

An agent of the Globe Agency Company named Morgan testified that the insurance company sent him the note for collection, and that he advised Hutchins of that fact, whereupon Hutchins brought the policy and offered to surrender it for his note, and made the statement at the time that he was not able to pay the note. Witness advised the insurance company of this offer and asked instructions, and received a letter from the insurance company directing him to refuse to accept the policy and press collection of the note, and that the company would send Riddle down to adjust this matter, and that Riddle called upon him and secured the note and upbraided him for writing the company about it, telling him that he owned the note and had paid the company its portion thereof, and Riddle took the note to a Mr. Gardner, who was also an agent of the agency company, and left it with him for collection, making the statement at the time that he had extended time for payment until the fall of 1914 when the insured would pay with his cotton. These conversations occurred after the maturity of the note, and while they were not all admitted in evidence by the court, appellant offered to make this proof, and in view of the fact

that there was a directed verdict in favor of the insurance company, we must give this evidence its highest probative value.

(2)   We think the evidence recited entitled appellant to go to the jury upon the question of the extension of the time by Riddle for the payment of this note and his authority so to do.   Cooley's Briefs on Insurance, vol. 1, page 345; *Queen of Ark. Ins. Co. v. Cooper*, 81 Ark. 160; *Shawnee Mutual Fire Ins. Co. v. Cannedy*, 129 Pac. 865; *American Employers' Liability Ins. Co. v. Fordyce*, 62 Ark. 562.

This testimony presents a state of facts similar to those in the case of *Mutual Life Ins. Co. v. Abbey*, 76 Ark. 328, in which case it was said:

"Mr. Remmel, the general agent, was clothed with authority to transact generally the company's business in this State, and to collect the premiums, and was permitted by the company to accept notes to himself in lieu of cash to the company, the company looking to him instead of the policy holder for the cash in such cases.   This general power gave him authority to bind the company by accepting notes in lieu of cash; and, whether he paid the company or not, when he accepted a note and waived cash payments, the company was bound by his act, for it was within the apparent scope of his agency.   See *Miller v. Life Ins. Co.*, 12 Wall. (U. S.) 285, and long line of decisions following and approving it collected in 7 Rose's Notes on U. S. Reports, pp. 546-549."

We conclude, therefore, that the court should not have directed a verdict for the insurance company **upon** either of the theories upon which that action is defended by learned counsel for appellee, and the judgment of the court below will, therefore, be reversed and the cause remanded for a new trial.