AMERICAN LIFE & ACCIDENT ASSOCIATION *v.* WALTON.

## Opinion delivered March 11, 1918.

1. INSURANCE—APPLICATION—WARRANTIES AND REPRESENTATIONS.— When the application is not made a part of the insurance contract, the statements therein contained, even though they are designated as warranties, will be treated as mere representations. Statements contained in an application for insurance will not be construed as warranties if they may reasonably be construed as representations.

2. INSURANCE — APPLICATION — ANSWERS OF APPLICANT — ACTS OF AGENT.—An insurance company is bound by the acts of its agent who writes down incorrectly the answers given by the applicant, to questions propounded in the application.

3. INSURANCE—APPLICATION—UNKNOWN DISEASE.—A statement by an applicant that he is in a sound and healthy condition, is not a false representation when he was a victim of an internal disorder, of which he had no knowledge.

4. INSURANCE—APPLICATION—STATEMENTS OF APPLICANT—PHYSICAL CONDITION.—Appellee in an application for accident insurance stated that he was at the time in a sound state of health. It appeared that during the course of his life that the applicant had sustained a broken wrist, a blow on the head and had had chills and fever. *Held*, the applicant's answer, where not made with intent to deceive, did not constitute a false representation.

5. ACCIDENT INSURANCE—TOTAL DISABILITY.—After an accident, plaintiff held to have suffered a total disability, although for several days after the accident, and before he was sent to the hospital, he was able to do a small amount of work.

6. ACCIDENT INSURANCE—VISIBLE MARKS ON BODY OF INSURED.—The measure of plaintiff's recovery under an accident policy, held not excessive, where the injury was internal, and the policy provided for a limited recovery where there are no external marks on the insured's body, showing the injury.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*D. K. Hawthorne,* for appellants.

1. There is no liability. The statements in the application were false. They were warranties and material and binding upon him. The application was a part of the policy and there was a breach of the warranties. His answers were untrue. 146 S. W. 125-8; 84 Ark. 59; 58 *Id.* 528; 132 N. W. 1067; Ann. Cas. 1913 A. 847-9; 82 Ark. 400; 148 S. W. 526; 74 Ark. 1; 72 *Id.* 620; 81 *Id.* 202-6; 65 *Id.* 581-8; *Ib.* 295; 122 *Id.* 58; 120 *Id.* 605.

2. He was not totally disabled, nor was the injury *immediate* disability.

3. The verdict is excessive. The limit was four months recovery. No penalty nor attorney's fees should be allowed. 92 Ark. 378; 93 *Id.* 84.

*McCulloch & Jackson,* for appellee.

1. The statements in the application were mere representations—not warranties. 105 Ark. 101; 14 R. C. L. § § 206-9-10; 106 Ark. 99.

2. The answers were true. The agent of appellant filled out the application and answers. The acts of the agent bind the company. 118 Ark. 442; 113 *Id.* 185; 111 *Id.* 436; 108 *Id.* 261; 71 *Id.* 295; 65 *Id.* 581; 128 Ark. 528. See 14 R. C. S. § 345.

3. Plaintiff was totally disabled. 21 A. & E. Ann. Cas. 1031; A. & E. Ann. Cas. 1914 D. 380.

3. Defendant denied all liability and waived proof of injury. There is ample proof of external visible injury. 106 Ark. 91.

4. The verdict is not excessive.

SMITH, J. The American Life & Accident Insurance Company, hereinafter referred to as the company, issued an accident indemnity policy on September 15th, 1915, to E. N. Walton, hereinafter referred to as the plaintiff. On October 10th, 1915, plaintiff was returning from a boat landing on the Mississippi River to his home in Arkansas

City, and, in order to cross a railroad track, which ran parallel to the levee upon which plaintiff was walking at the time, he jumped from the levee on to a stationary flat car loaded with logs, a distance of four or five feet, but on account of the wet and slippery condition of the logs, plaintiff slipped and fell to the ground, a distance of twelve feet. As a result of his fall plaintiff sustained very serious injuries, the physical, visible evidence of which consisted of a sprained wrist and a swelling in the abdomen. There was immediate pain in the stomach, accompanied by nausea. Immediately following his accident plaintiff worked a few hours at night, but was unable to perform a regular day's work. Plaintiff was an electrician, and continued to do some work at night for a week or ten days, but was forced to quit work on account of the increasing pain in his stomach, since which time he was unable to do any regular work until the 21st of February, 1916, when, as a result of the accident aforesaid, he was operated on for what is known as mobile caceum, this being an operation to attach to the abdomen the lower bowel, which had become loosened from its regular place by reason of the accident. The operation was apparently successful, although the plaintiff was left in a weakened and run down condition, and he testified that even up to the time of the trial he had not been restored to his normal condition.

Plaintiff was taken to the hospital on January 3rd, 1916, where he remained until the 24th of March, and after being taken home he was confined to his bed for six days and to his home fourteen days.

The company denied any liability under the policy, and this suit was brought to recover, upon the theory that a total disability had been sustained, during the time for which a recovery was asked and judgment for penalty and attorney's fees was also prayed.

The application for the policy contained the statement that the plaintiff was in sound and healthy condition, and that he had never been ruptured; when, according to his own admission on the witness stand, he had had chills

with the accompanying fever, and he had been ruptured when a child, and had been operated on for it in 1903, and in 1906 he had had performed a preventive operation for rupture on the opposite side. These operations were completely successful. Plaintiff also testified that in 1911 he had been thrown from a horse, from which he sustained an acute attack of indigestion, and prior to that time he had been struck on the head by a pole as he was getting off a street car, for which accident he was treated by a physician, and in 1911 he had an X-ray examination made of his head. It was also shown that as a boy he had broken his wrist.

However, prior to the taking out of the policy sued on, plaintiff had recovered from these mishaps, and none of them apparently contributed in any manner to the trouble which sent him to the hospital. Plaintiff's trouble was first diagnosed as appendicitis, and he was operated on for that disease on January 4th, 1916; but this operation did not relieve the pain, and a second operation for mobile caceum was performed on February 21st. This operation, as stated, gave comparative relief, and started plaintiff on the road to recovery. The surgeon testified that the mobile caceum was congenital, and that the plaintiff did not know of its existence and that its existence might never have been made known but for such an accident as plaintiff sustained, although its presence made the plaintiff peculiarly susceptible to injury from such an accident.

The company now denies liability under the policy upon the ground that the statements set out above in the application were false and that in the application these answers were warranted to be complete and true and material and binding on him, whether written by himself or by the agent of the company.

(1) These answers were not copied into the policy, nor was the application, or a copy thereof, attached thereto. Neither did the policy in express terms make the application a part of the contract. Ordinarily, the policy constitutes the contract, and, while the application may be

made a part of the contract, such is not the case unless the policy makes it so. When the application is not made a part of the contract, the statements there contained, even though they are there designated as warranties, are treated as mere representations made to induce the issuance of a contract of insurance. The cases on the subject state the rule to be that statements contained in the application will not be construed to be warranties if such statements may be reasonably construed to be mere representations. We think an application which is not expressly made a part of the contract of insurance is open to that construction. A leading case on the subject is that of *Spence* v. *Central Accident Ins. Co.,* 236 Ill. 444. In that case it was said:

"A warranty being part of the contract itself as contra-distinguished from a representation, which is a mere inducement to the contract, must necessarily appear in the contract itself. In *Mutual Benefit Life Ins. Co.* v. *Robertson,* 59 Ill. 123, this court, on page 126, said: 'A warranty is in the nature of a condition precedent. It must appear on the face of the policy, or if on another part of it or on a paper physically attached, it must appear that the statements were intended to form a part of the policy, or if on another paper, they must be so referred to in the policy as clearly to indicate that the parties intended them to form a part of it. A warranty can not be created nor extended by construction'—citing Reynolds on Life Insurance, 85 *et seq.*; *Campbell* v. *New England Ins. Co.,* 98 Mass, 381; *Burritt* v. *Saratoga Ins. Co.,* 5 Hill 188; *Jefferson Ins. Co.* v. *Cotheal,* 7 Wend. 72.

"Defendant in error contends that the application in this case is a part of the policy. The only language in the policy that makes any reference to the application is found in the first sentence of the policy, where it is recited: 'In consideration of the warranties and agreements in the application for this policy and of $25 does hereby insure Robert Spence, of Chicago, State of Illinois, by occupation a collector publishing house,' etc. It will be observed that the reference here to the application does

not expresssly make it a part of the policy; nor does such effect necessarily follow by a fair construction of the language, even if a warranty could thus be imported into the contract. The doctrine of warranty, in the law of insurance, is one of great rigor and frequently operates very harshly upon the assured, and courts will never construe a statement as a warranty unless the language of the policy is so clear as to preclude any other construction. As was said by Justice Gray in *McClain* v. *Providence Savings Life Assur. Soc.*, 110 Fed. Rep. 80: 'The practical operation of such literal warranties is so often harsh and unfair that courts require their existence to be evidenced clearly and unequivocally, and are not inclined to allow it to rest upon a mere verbal interpretation where a reasonable construction of a contract as a whole will authorize a different meaning. All reasonable doubts as to whether statements inserted in or referred to in an insurance policy are warranties or representations should be resolved in favor of the insured.' "

After a further discussion of the principles involved, the court announced its conclusion as follows: "Certainly a mere recital, such as the one in this policy, falls far short of an expressed stipulation that the application is made a part of the policy, which, under the law, is necessary before it can be so treated. The application itself cannot be considered in determining the preliminary question whether it is a part of the policy. This fact must affirmatively appear from the policy itself. It is only after it is determined, from a consideration of the language of the policy, that the two papers constitute the contract that the application can be resorted to. The application not being a part of the contract, any statements contained therein are mere representations, and not warranties. (May on Insurance, Sec. 158). As such, they may avoid the policy if found to be false and material, within the legal meaning of these terms."

The doctrine of this case was expressly approved by this court in the case of *Metropolitan Life Ins. Co.* v. *Johnson*, 105 Ark. 101, 105, where, after approving the

doctrine of that case, this court said: "It follows that, the application not being a part of the policy, any statements contained therein are representations and not warranties. A warranty differs from a representation in creating an absolute liability, whether made in good faith or not. The reason is that a non-compliance with a warranty operates as an express breach of the contract, while a misrepresentation renders the policy void on the ground of fraud. The questions propounded in the application, as set out in the statement of facts, call for answers founded on the knowledge or belief of the applicant, and in such cases a misrepresentation or omission to answer will not avoid the policy unless wilfully or knowingly made with an attempt to deceive. 25 Cyc. 801, and cases cited. See also *Reppond* v. *Nat. Life Ins. Co.* (Tex.), 11 L. R. A. (N. S.) 981; *Aetna Life Ins. Co.* v. *Rehlaender,* 68 Neb. 284, 4 A. & E. Ann. Cas. 251."

(2) Testifying concerning his rupture, plaintiff stated that he was not asked if he had been ruptured, but that he was asked, "Are you ruptured?", and that his answer that he was not ruptured was the truth. He stated that the questions and answers were not read over to him and that he signed the application without knowing that any incorrect answers had been written down on the application blank. This statement was contradicted by the company's agent; but the finding of the court, who sat, by consent, as a jury, is conclusive on this question of fact, as the court expressly declined to find, at the company's request, that plaintiff had misrepresented his physical condition. If the answer was correctly given by the applicant and, without knowledge or collusion on his part, an incorrect answer was written into the application by the agent, the company is as completely bound by this action of its agent as it would have been had that agent put down in the application the correct answers to the questions asked. *Mutual Aid Union* v. *Blacknall,* 123 Ark. 377, 196 S. W. 792; *United Assur. Assn.* v. *Frederick,* 130 Ark. 12, 195 S. W. 691; *Liv. & London & Globe Ins. Co.* v. *Payton,*

128 Ark. 528; *Westchester Fire Ins. Co.* v. *Smith,* 128 Ark. 92; *Hutchins* v. *Globe Life Ins. Co.,* 126 Ark. 360; *Maloney* v. *Maryland Casualty Co.,* 113 Ark. 174, 184; *Peebles* v. *Eminent Household of Columbian Woodmen,* 111 Ark. 436; *Queen of Ark. Ins. Co.* v. *Laster,* 108 Ark. 261; *Franklin Life Ins. Co.* v. *Galligan,* 71 Ark. 295; *Mutual Reserve Fund Life Assn.* v. *Farmer,* 65 Ark. 581.

(3-4)   It is not contended that plaintiff knew or could have known that he had a mobile caceum, and the fact that he was thus afflicted cannot, therefore, constitute a false representation that he was "in sound and healthy condition, mentally and physically." As to the broken wrist and the blow on the head and chills and fever the court, no doubt, found that none of these things were material to the risk, but that they were such vicissitudes as might occur to any pilgrim on his way through the hazards of this life, but who would still be a fit subject for insurance. And if these answers were not made wilfully or knowingly with an intent to deceive, they will not avoid the policy. *Metropolitan Life Ins. Co.* v. *Johnson,* 105 Ark. 101, 105, and cases there cited.

(5)   It is also insisted that the verdict is excessive. But upon this feature of the case little need be said, once it has been determined that any liability exists. Judgment was rendered under the clause of the policy which fixes the indemnity to be paid in case of total disability; and it is said that the plaintiff was not totally disabled during the period for which he was allowed to recover for total disability. It is true the proof does show that for a few days after the injury plaintiff did some work; but this work was irregular and desultory. He could not follow his employment with any regularity for even a day, and the work he attempted to do became so painful that he was compelled to desist. We think this testimony warranted a finding of total disability. *Great Eastern Casualty Co.* v. *Robins,* 111 Ark. 607; *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417; *Order U. C. Travelers* v. *Barnes,* 7 A. & E. Ann. Cas. 809.

What we have just said disposes of the company's contention that the right of recovery is governed by the provisions of Paragraph B, which reads as follows:

*"Partial Disability.*

"(B)   Or, if such injuries shall immediately, wholly and continuously, from date of accident, disable and prevent the insured from performing one or more important daily duties pertaining to his occupation, or in the event of like disability, immediately following total disability, or in event of total disability not immediately following injury, but within fifteen days of date of injury, the company will pay the insured for the period of such disability, not exceeding two consecutive months, one-half of the rate above specified for the total loss of time; provided, the combined period for which indemnity shall be paid for total and partial disability described in paragraphs (a) and (b) hereof shall not exceed twelve consecutive months.''

It is true, as stated, that the trouble developed by the accident culminated in the operation which was performed more than fifteen days after the date of the injury. But the testimony shows that during this interval of time the plaintiff was doing what he could to avoid the consequences of his injury and that, while more than fifteen days elapsed before the operation which was finally performed was performed, still during that interval the plaintiff was so completely disabled that he did not follow his regular occupation during all of any day.

For the meaning of the word "immediately," as used in this connection, see the case of *Continental Casualty Co.* v. *Ogburn,* 57 Sou. 852, which is annotated in Volume 34 Am. & Eng. Ann. Cas. at p. 377.

(6)   It is finally insisted that the recovery is excessive because of Paragraph H of the policy, which provides that "in the event of injury or loss, fatal or otherwise, of which there shall be no external or visible marks on the body;  *  *  * or unnecessary exposure to danger,  *  *  * the limit of the company's liability shall be one-fourth of

the amount which would otherwise be payable under this policy, and 'the limit of the company's liability under this paragraph shall not exceed two months' disability, anything herein to the contrary notwithstanding."

The purpose, no doubt, of this provision was to prevent imposition upon the company by malingering or simulating an injury which did not exist, and the company, in this manner, had undertaken to guard itself against any such fraud or imposition by stipulating that there should be some visible marks on the body evidencing the injury. This provision, however, cannot be construed as meaning that all of the injuries sustained must be evidenced by external or visible marks on the body. It would be unreasonable to so construe this policy as to grant immunity to the company against any injury which was not so evidenced, if there were visible and external marks on the body to show that an injury had been sustained. It is sufficient if there be some visible or external marks which evidence the injury, although the extent of the injury can not be determined from the visible marks alone. The evidences which exist here were the sprained wrist and the swollen abdomen, and met the requirements of the policy that there shall be a visible and external evidence of the injury sustained.

Finding no prejudicial error, the judgment of the court below is affirmed.